UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTINA BIRD, et al., | No. 19-cv-1024-KJM-CKD |
| Plaintiffs, | |
| v. | ORDER |
| GLOBUS MEDICAL, INC., | |
| Defendant. | |

        Plaintiffs Christina and Clarence Bird bring this suit against defendant Globus Medical, Inc., based on injuries Christina Bird alleges she suffered after the medical device XPAND-S was used in her spinal surgery. Defendant moves to dismiss all of plaintiffs' claims. For the reasons below, the court GRANTS the motion in part and DENIES it in part.

I.     BACKGROUND

        On or about September 2, 2010, plaintiff Christina Bird underwent a surgery called a corpectomy[1] on the cervical region of her spine, which is the part of the spine that makes up the neck. Not. of Removal, Ex. A ¶¶ 14–15, 19, ECF No. 1-1 (Compl.). As part of the surgery, her

---

[1] According to plaintiffs, a "corpectomy" is "a complex procedure that consists of removing the entire vertebral body (the box-shaped bones) as well as the discs above and below it and replacing them all with the same 'dime-sized' diameter (or footprint) device, but that is longer in span (or taller) to match the taller height of the surgically removed vertebra." Compl. ¶ 13.

1

1   surgeon inserted a device plaintiffs call "XPAND-S." *Id.* ¶ 19.  "XPAND-S" appears to be
2   plaintiffs' name for the product XPAND in size small, or XPAND-Small.  *See* Opp'n, ECF No. 13,
3   at 5; Reply, ECF No. 15, at 9.  Though the parties agree the XPAND device was approved by the
4   FDA under a process called 510k clearance, they appear to dispute whether the XPAND in size
5   small was properly approved.  *Id.* at 10; Opp'n at 7–8.

6   Roughly seven years after her surgery, Ms. Bird discovered the XPAND device had
7   moved out of its proper position in her spine, causing danger of paralysis and death.  Compl. ¶ 20.
8   On March 22, 2019, Christina Bird and Clarence Bird filed an action in state court against the
9   manufacturer of the device, Globus Medical, Inc. for: (1) fraud by concealment, (2) negligence per
10  se, and (3) failure to warn.  *See generally* Compl.  Defendant removed the case to federal court on
11  the basis of diversity jurisdiction, Not. of Removal, ECF No. 1, at 2–3, and now moves to dismiss
12  all of plaintiffs' claims, Mot., ECF No. 8-1.  Plaintiffs oppose, ECF No. 13, and defendant has filed
13  a reply, ECF No. 15.  In conjunction with its motion to dismiss, defendant also requests that the
14  court judicially notice documents from the FDA website, Def.'s Req. for Jud. Not., ECF No. 9,
15  which plaintiffs do not oppose.  Plaintiffs also request the court judicially notice certain documents,
16  ECF No. 13-1, which defendant has not opposed.  The court resolves the motion to dismiss and
17  related requests below.

18  II.     REQUEST FOR JUDICIAL NOTICE

19  As part of defendant's motion to dismiss, defendant argues XPAND-S is not one of
20  its products.  Mot. at 7.  In support of this argument, defendant requests the court judicially notice
21  five exhibits, all taken from the FDA website: (1) the FDA website page entitled "How to Find and
22  Effectively Use Predicate Devices (Ex. 1); (2) the FDA website page entitled "510(k) Submission
23  Process" (Ex. 2); (3) a document from the FDA website entitled "III.  510(d) Summary" submitted
24  by Globus Medical Inc. for the device "XPAND Corpectomy Spacer" (Ex. 3); an FDA website
25  page entitled "510(k) Premarket Notification" listing the results of the search "Applicant: globus"
26  and "Device Name: xpand" (Ex. 4); and (4) the FDA website page entitled "How to Prepare a
27  Traditional 510(k)" (Ex. 5).  Defendant argues there is no question regarding the authenticity of the
28  exhibits, because they are "taken directly from the FDA's own website."  Def.'s Req. for Jud. Not.

at 3–4 (citing, *inter alia*, *Daniels-Hall v. National Educ. Ass'n*, 629 F.3d 992, 998–99 (9th Cir. 2010) ("[It is] appropriate to take judicial notice of . . . information, as it was made publicly available by government entities (the school districts), and neither party disputes the authenticity of the web sites or the accuracy of the information displayed therein."); *In re Amgen Inc. Sec. Litig.*, 544 F. Supp. 2d 1009, 1023–24 (C.D. Cal. 2008) (taking judicial notice of drug labels "taken from the FDA's website"). Because all of defendant's exhibits are from the FDA's public website, and plaintiffs do not oppose the request for judicial notice nor challenge the factual contents of documents covered by the request, the court takes judicial notice of the contents of the exhibits, to the extent the contents are factual. The court declines to take judicial notice of anything in the exhibits that may be construed as a legal conclusion regarding, for example, the legal framework surrounding the FDA's approval process. *See Fernandez v. Nevada*, No. 3:06-CV-0628-LRH-RAM, 2011 WL 3957612, at *2 (D. Nev. Sept. 6, 2011) (declining to take judicial notice of proposed judicial fact because it "is a legal conclusion" and "the court could not . . . take judicial notice of it"); *Alton v. Medtronic, Inc.*, 970 F. Supp. 2d 1069, 1077 (D. Or. 2013) (taking judicial notice of "adjudicative facts" within FDA documents, but declining to judicially notice "other content of the identified documents").

Similarly, in support of their opposition, plaintiffs request judicial notice of: (1) the results of a "search of the Federally [sic] maintained database for medical device manufacturers to report adverse incidents for Globus XPAND, run on August 22, 2019" from the FDA website (Ex. 1); and (2) a copy of a brochure about the XPAND Corpectomy Spacer (Ex. 2). Pl.'s Req. for Jud. Not. at 2. For the same reasons and in the same manner described above, the court judicially notices plaintiffs' Exhibit 1, as it is taken directly from a government website. However, plaintiffs do not provide adequate information for the court to judicially notice Exhibit 2, particularly because the court has no way of determining the origin of the document. Accordingly, the court declines to judicially notice plaintiff's' Exhibit 2.

III.   LEGAL STANDARD

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." A court may

1  dismiss "based on the lack of cognizable legal theory or the absence of sufficient facts alleged under
2  a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

3  Although a complaint need contain only "a short and plain statement of the claim
4  showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), in order to survive a motion
5  to dismiss this short and plain statement "must contain sufficient factual matter . . . to 'state a claim
6  to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell
7  Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint must include something more than
8  "an unadorned, the-defendant-unlawfully-harmed-me accusation" or "'labels and conclusions' or
9  'a formulaic recitation of the elements of a cause of action.'" *Id.* (quoting *Twombly*, 550 U.S. at
10 555). Determining whether a complaint will survive a motion to dismiss for failure to state a claim
11 is a "context-specific task that requires the reviewing court to draw on its judicial experience and
12 common sense." *Id.* at 679. Ultimately, the inquiry focuses on the interplay between the factual
13 allegations of the complaint and the dispositive issues of law in the action. *See Hishon v. King &
14 Spalding*, 467 U.S. 69, 73 (1984).

15 In making this context-specific evaluation, this court must construe the complaint in
16 the light most favorable to the plaintiff and accept as true the factual allegations of the complaint.
17 *Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007). This rule does not apply to "a legal conclusion
18 couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986), nor to "allegations
19 that contradict matters properly subject to judicial notice" or to material attached to or incorporated
20 by reference into the complaint, *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988–89 (9th Cir.
21 2001) (citation omitted). A court's consideration of documents attached to a complaint or
22 incorporated by reference or matter of judicial notice will not convert a motion to dismiss into a
23 motion for summary judgment. *United States v. Ritchie*, 342 F.3d 903, 907–08 (9th Cir. 2003)
24 (citation omitted).

25 IV.    DISCUSSION

26 Defendant moves to dismiss all three claims in the complaint and plaintiffs' request
27 for punitive damages. The court addresses each of defendant's arguments in turn.
28 /////

4

A.     Plaintiff Clarence Bird

First, defendant asks the court to dismiss all the claims made on behalf of Clarence Bird, because plaintiffs have not alleged any facts pertaining to Clarence Bird, including his relationship to Christina Bird, nor any injury he has suffered as a result of defendant's actions. Mot. at 7. Defendant is correct. Accordingly, all claims made on behalf of Clarence Bird are DISMISSED, but with leave to amend, if possible under Rule 11. *See* Fed. R. Civ. P. 11. The court refers below to Christina Bird's claims only.

B.     Injury

Defendant argues the court should dismiss all of plaintiff's claims, because plaintiff has failed to allege any present injury. Mot. at 14 (citing *Naeyaert v. Kimberly-Clark Corp.*, No. ED-cv-17-00950-JAK (JPRx), 2018 WL 6380749, *8 (C.D. Cal. Sept. 28, 2018); *Macy's Cal., Inc. v. Super. Ct.*, 41 Cal. App. 4th 744, 756 (1995) (physical injury for purposes of parasitic emotional distress damages requires actual harm)).

However, plaintiff alleges the XPAND-S moved out of its proper position in Christina Bird's spine and, as a result, she "is under constant threat of imminent death or paralysis" and it is "unsafe to remove the device." Compl. ¶ 20. Plaintiff also alleges she "has suffered . . . severe, lasting and debilitating physical and mental pain and suffering" and "has incurred medical, hospital and related expenses" due to the XPAND-S moving out of position after her surgery. *Id.* ¶¶ 31–32. Plaintiff's allegation of physical pain and suffering is conclusory, and therefore insufficiently pleaded. However, plaintiff's medical costs are sufficient to show economic injury.

1.     Emotional Distress

The court notes that plaintiff can recover damages for emotional distress or mental suffering even if there is no physical injury. *Naeyaert*, 2018 WL 6380749, *8. However, if a plaintiff suffers no physical injury, and bases her claim solely on a fear of future disease or physical harm, plaintiff must show her fear "stems from a knowledge, corroborated by reliable or scientific opinion, that it is more likely than not" the feared harm will occur. *See Macy's California, Inc.*, 41 Cal. App. 4th at 750 (analyzing injury from exposure to toxic substance that threatens cancer) (citing *Potter v. Firestone Tire & Rubber* Co., 6 Cal. 4th 965 (1993)); *see also Herbert v. Regents*

*of University of California*, 26 Cal. App. 4th 782, 784 (1994) (applying this standard to fear of AIDS/HIV infection). Under this standard, plaintiffs have not adequately pleaded mental pain and suffering. Compl. ¶¶ 31–32.

### 2. Economic Injury

The "economic loss rule" defendant cites does not bar plaintiff from pleading economic injury for plaintiffs' fraud claim. "Under the economic loss doctrine, a plaintiff's tort recovery of economic damages is barred unless such damages are accompanied by some form of physical harm (i.e., personal injury or property damage)." *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 903 F. Supp. 2d 942, 961 (S.D. Cal. 2012). However, the economic loss rule does not bar such damages "where he or she can allege personal injury or damage to other property, that is, property other than the product itself." *Nada Pac. Corp. v. Power Eng'g & Mfg., Ltd.*, 73 F. Supp. 3d 1206, 1221 (N.D. Cal. 2014) (internal quotation marks and citation omitted).

The California Supreme Court has also held that a fraud claim was not barred by the economic loss rule where the claim was based on allegations of misrepresentations that "risked physical harm to persons." *Robinson Helicopter Co. v. Dana Corp.*, 34 Cal. 4th 979, 991 n.7 (2004). Under this holding, plaintiff has sufficiently pleaded injury for her fraud claim.

Generally, liability for plaintiff's negligence per se claim and negligence based on failure to warn is "limited to damages for physical injuries and recovery of economic loss is not allowed" unless plaintiff pleads "(1) personal injury, (2) physical damage to property, (3) a 'special relationship' existing between the parties, or (4) some other common law exception to the rule[.]" *Kalitta Air, L.L.C. v. Cent. Texas Airborne Sys., Inc.*, 315 F. App'x 603, 605 (9th Cir. 2008) (quoting *J'Aire Corp. v. Gregory*, 24 Cal. 3d 799 (1979)). Because plaintiff does not argue this point nor is it apparent plaintiff has pled any of these elements, purely economic damages are insufficient to plead injury for plaintiff's negligence claims and therefore plaintiff's negligence per se claim and failure to warn claim are DISMISSED with leave to amend.

/////

/////

C. <u>Pre-emption</u>

A complex legal framework dictates whether state law causes of action are preempted under the Medical Device Amendment (MDA) to the federal Food, Drug, and Cosmetics Act (FDCA), Medical Device Amendments of 1976, § 2(a), 21 U.S.C. § 360k(a). A colleague aptly described that framework in *Hawkins v. Medtronic, Inc.*, 62 F. Supp. 3d 1144, 1150 (E.D. Cal. 2014), explaining:

> [T]he MDA contains express and implied preemption provisions which provide only a 'narrow gap' through which a state-law claim must fit to escape preemption. The plaintiff must be suing for conduct that violates the FDCA (or else his claim is expressly preempted by § 360k(a)[2]), but the plaintiff must not be suing *because* the conduct violates the FDCA (such a claim would be impliedly preempted under *Buckman* [*Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 353 (2001)]).

*Id.* (emphasis in original) (citing, *inter alia*, *Hawkins v. Medtronic, Inc.*, No. 1:13-CV-00499 AWI SK, 2014 WL 346622, at *5 (E.D. Cal. Jan. 30, 2014); *Perez v. Nidek Co., Ltd.*, 711 F.3d 1109, 1120 (9th Cir. 2013)). Where a state requirement related to a medical device is "different from, or in addition to" the federal requirements, a claim for a violation of that state requirement is preempted by § 360k; however, § 360k does not preempt state claims "arising out of the violation of state-law duties that 'parallel' duties arising under the FDCA." *Alton*, 970 F. Supp. 2d at 1081 (quoting *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 496 (1996)). For a state duty to be "parallel" to the federal requirement, "the plaintiff must show that the requirements are 'genuinely equivalent,'"

---

[2] The MDA's express preemption provision states, in relevant part:

> [N]o State or political subdivision of a State may establish or continue in effect with respect to a device intended for human use any requirement—
>
> (1) which is different from, or in addition to, any requirement applicable under this chapter to the device, and
>
> (2) which relates to the safety or effectiveness of the device or to any other matter included in a requirement applicable to the device under this chapter.

21 U.S.C. § 360k(a).

7

1    meaning the state duty does not "add to" the federal requirement. *Martin v. Medtronic, Inc.*,
2    32 F. Supp. 3d 1026, 1034 (D. Ariz. 2014) (quoting *Wolicki–Gables v. Arrow Int'l, Inc.*, 634 F.3d
3    1296, 1300 (11th Cir. 2011)). Claims that "exist solely by virtue of the FDCA . . . requirements"
4    are impliedly preempted, *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 353 (2001),
5    because the MDA requires any action to enforce the provisions of the FDCA "be by and in the
6    name of the United States," 21 U.S.C. § 337(a).

7            Defendant only argues plaintiffs' claims are impliedly preempted because they
8    "exist solely by virtue of the existence and alleged violation of regulations under the FDCA
9    requiring FDA premarket approval or clearance for the sale of medical devices." Mot. at 16.
10   According to defendant, "Plaintiffs' fraud by concealment and failure to warn claims are premised
11   on Globus' alleged non-disclosure concerning the scope of the FDA's 510k clearance" and
12   "[p]laintiffs' negligence claim is based upon an alleged illegal off-label marketing of the device";
13   the claims are therefore preempted. *Id.* Because defendant does not argue the claims are expressly
14   preempted, the court addresses only implied preemption.

15           The Ninth Circuit cases of *McClellan v. I-Flow Corp.*, 776 F.3d 1035, 1040 (9th
16   Cir. 2015) and *Perez* are instructive, as they address implied preemption of claims similar to those
17   made here. In *Perez*, the Ninth Circuit found plaintiff's fraud by omission claim was expressly
18   preempted, because it "exist[ed] solely by virtue of the FDCA . . . requirements," and was therefore
19   "an attempt to privately enforce the FDCA." *Perez*, 711 F.3d at 1109, 1117, 1119. There, the claim
20   "rest[ed] solely on the non-disclosure to patients of facts tied to the scope of [FDA] approval." *Id.*
21   at 1119–20. By contrast, in *McClellan*, the Ninth Circuit held plaintiff's claim that defendant
22   "negligently failed to warn that its pain pump should not be used in intra-articular spaces such as
23   the glenohumeral joint" was not preempted because it "did not arise solely by virtue of the MDA,"
24   the allegations occurred "outside the context of the regulatory process" and they did not "usurp the
25   exclusive federal enforcement power over the MDA." *McClellan*, 776 F.3d at 1037, 1041.

26           1.    <u>Failure to Warn</u>

27           Plaintiffs' failure to warn claim (claim 3) is more closely analogous to the claim in
28   *McClellan* than *Perez*. First, the claim does not appear to be based on anything defendant did or

did not do related to its communications with the FDA; in other words, the alleged acts occurred "outside the context of the regulatory process." *McClellan*, 776 F.3d at 1041. Second, the claim does not exist "solely by virtue of the FDCA . . . requirements," but could exist independently of any FDCA requirements, because it is based, *inter alia*, on defendant's failure to warn "that the device was not safe for use in the cervical spine" and "that the majority of patients in whom the device has been implanted in the cervical spine have suffered from subsidence of the device following the surgery . . . ." Compl. ¶ 60. In other words, even if the FDCA did not exist, plaintiff could still conceivably formulate her failure to warn claim. Therefore, the failure to warn claim is not preempted, based on the reasoning in *McClellan*.

### 2. Fraud by Concealment

Plaintiffs' fraud by concealment claim (claim 1) appears to implicate *Perez*; but, upon closer review, it too survives preemption. The claim is based in part on the allegation that defendant "conceal[ed] that neither the XPAND-S or any other corpectomy cage has ever been approved [by the FDA] for use in the cervical spine," Compl. ¶ 22, similar to the claim in *Perez*. *See Perez*, 711 F.3d at 1118–19. However, plaintiffs further allege defendant intentionally created "the false impression in the medical community that XPAND-S was properly cleared for use by the FDA and had established its safety and efficacy." Compl. ¶ 23. This pleading describes an "omission that tends to render false [defendant]'s off-label promotion of [XPAND-S]," which "both violates the FDCA and is a basis for fraud liability under California law," *Hawkins*, 62 F. Supp. 3d at 1155. Like the negligence claim in *Hawkins*, to the extent plaintiffs' fraud by concealment claim is, a "based on misrepresentations made during off-label promotion"; it is "not impliedly preempted, because [the] claim is rooted in traditional state tort law and exists regardless of the FDCA." *Id.* at 1154–55 (alterations and internal quotation marks omitted) (quoting *Coleman v. Medtronic, Inc.*, 223 Cal. App. 4th 413, 433–34 (2014), *as modified* (Feb. 3, 2014)); *see also Alton*, 970 F. Supp. 2d at 1097–98 (plaintiff's fraud claim not preempted because allegations sufficient to state claim "independently of the FDCA or of any other federal law"). Therefore, plaintiffs' fraud by concealment claim is also not preempted.

/////

        4.        <u>Negligence Per Se</u>

Lastly, plaintiffs' negligence per se claim (claim 2) is based on the allegation that, by "manufactur[ing] and provid[ing] an unapproved or uncleared corpectomy cage to Plaintiff's physician and intend[ing] it to be implanted during Plaintiff's cervical spine surgery," defendant violated California Health and Safety Code section 111550, which regulates the sale of "new" medical devices, and is therefore negligent per se. Compl. ¶¶ 39–41. In other words, defendant's alleged violation of the FDCA constituted a violation of a state law, which was negligent. In *Stengel v. Medtronic Inc.*, 704 F.3d 1224, 1232 (9th Cir. 2013), the Ninth Circuit analyzed a claim for failure to warn based on the allegation defendant "failed to comply with its duty under federal law" to warn the FDA about known risks, and therefore "it breached its 'duty to use reasonable care' under Arizona negligence law." *Id.* The court found the claim was not preempted because the claim "rests on a state-law duty that parallels a federal-law duty under the MDA." *Id.* at 1233. Because plaintiffs' negligence per se claim is also based on a state law duty that appears to parallel federal law,[3] it also is not preempted by the MDA.

       D.        <u>Fraud by Concealment (Claim 1) & Rule 9 Specificity</u>

Federal Civil Procedure Rule 9(b) provides, in relevant part, that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "That is, the allegations must be sufficiently specific 'to give defendants notice of the particular misconduct which is alleged to constitute the fraud . . . so that they can defend against the charge and not just deny that they have done anything wrong.'" *Alton*, 970 F. Supp. 2d at 1105 (quoting *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985)). Rule 9(b) generally requires the plaintiff identify "the who, what, when, where, and how of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal quotation marks and citation omitted); *see also Houston v. Medtronic, Inc.*,

---

[3] Defendant does not make the argument that the California law on which this claim is based is not "genuinely equivalent," to federal regulations, or that it adds to the federal requirement. *Martin*, 32 F. Supp. 3d at 1034 (quoting *Wolicki–Gables*, 634 F.3d at 1300). Because defendant has the burden to show the claim is preempted, the court concludes the state law is parallel to the federal requirements in the absence of evidence or argument to the contrary.

957 F. Supp. 2d 1166, 1180 (C.D. Cal. 2013) (dismissing fraud-based claims for failure to allege "specific contents" of defendants' alleged misrepresentations). Rule 9(b)'s heightened pleading standard applies to plaintiff's fraud by concealment claim. *See Hawkins*, 62 F. Supp. 3d at 1155 (applying Rule 9(b) pleading standard to claims for fraudulent misrepresentation and fraud in inducement).

Plaintiffs' fraud by concealment claim is premised on the allegation, based on information and belief, that:

> Defendant conspired with physicians to fraudulently coerce patients into undergoing experimental cervical spine surgery with an unapproved/uncleared corpectomy cage. Defendant also subsidized physicians to write articles in scientific journals regarding their use of the XPAND-S in the cervical spine while concealing the financial relationship between Defendant and the physicians and also concealing that neither the XPAND-S or any other corpectomy cage has ever been approved for use in the cervical spine.

Compl. ¶ 22. As a result, plaintiffs allege, "many surgeons who use the XPAND-S and similar devices in cervical surgeries are unaware that they are using a device that has not been properly cleared by the FDA," which ultimately caused plaintiff Christina Bird to undergo her surgery and suffer injury. *Id.* ¶¶ 24–26. Plaintiffs' allegations do not identify any specific surgeons or "articles in scientific journals," nor any timeline whatsoever. While perhaps sufficient to suggest "how" defendant may have committed fraud by concealment and "what" was concealed, the complaint does not provide defendant with notice of "who . . . when, [and] where." *Vess*, 317 F.3d at 1106. Without knowledge of which physicians were involved in defendant's alleged conspiracy, for example, defendant can do nor more to defend itself than "just deny that [it has] done anything wrong.'" *Alton,* 970 F. Supp. 2d at 1105 (quoting *Semegen*, 780 F.2d at 731).[4]

Plaintiffs have not met Rule 9(b)'s heightened pleading standard for their fraud by concealment claim, and the claim is DISMISSED with leave to amend.

/////

---

[4] Even if the court were to consider the brochure attached to plaintiffs' request for judicial notice in support of their opposition, the result is unchanged, as it is unclear how the brochure supports plaintiff's fraud claim. *See* Pls.' Req. for Jud. Not., Ex. 2, ECF No. 13-1, at 8–9.

### E. Failure to Warn (Claim 3) & the Learned Intermediary Doctrine

Plaintiffs' third claim alleges defendant failed to adequately "provide a warning" "that the device, or any similar device, had never been approved for use in the cervical spine," "that the device was not safe for use in the cervical spine," "that the majority of patients in whom the device has been implanted in the cervical spine have suffered from subsidence of the device following the surgery," Compl. ¶ 60, and "plaintiff would not have underwent [sic] the surgery with the XPAND-S device had Plaintiff received the appropriate warnings," *id.* ¶ 62.

Defendant correctly points out that California applies the "learned intermediary" doctrine, which provides that a medical device manufacturer "satisfies its duty to warn when it provides adequate warnings to the prescribing physician, as opposed to the patient." *Zetz v. Bos. Sci. Corp.*, 398 F. Supp. 3d 700, 706 (E.D. Cal. 2019); *see also Brown v. Superior Court*, 44 Cal. 3d 1049, 1061–62 n.9 (1988). However, plaintiffs' allegations can fairly be read to state defendant failed to provide any warnings at all, to either plaintiffs or to the physicians. *See* Compl. ¶¶ 60–63. Defendant's argument that the learned intermediary doctrine requires dismissal of plaintiffs' third claim is unavailing, except to the extent the claim is based on a duty of defendant to warn plaintiffs directly.

### F. Punitive Damages

California Civil Code section 3294 provides for punitive damages for a violation of state law:

> In an action for the breach of an obligation not arising from contract, where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice, the plaintiff, in addition to the actual damages, may recover damages for the sake of example and by way of punishing the defendant.

Cal. Civ. Code § 3294(a). While plaintiffs ultimately must meet the substantive standard requiring "oppression, fraud, or malice" in order to obtain punitive damages, the Federal Rules of Civil Procedure impose no requirement of particularity to support a claim of punitive damages based on malice at the pleading stage. *See Woods v. Davol, Inc.*, No. 16-CV-02616-KJM-CKD, 2017 WL 3421973, at *8 (E.D. Cal. Aug. 9, 2017) (citation omitted).

/////

Under Federal Rule of Civil Procedure 9(b), "malice, intent, knowledge, and other conditions of the mind may be alleged generally." In this circuit, plaintiffs need not plead "any particularity in connection with an averment of intent, knowledge or condition of the mind." *Walling v. Beverly*, 476 F.2d 393, 397 (9th Cir. 1973) (citations omitted). Although some district courts in this circuit "have found that conclusory assertions of fraud, malice, and oppression were insufficient under the heightened pleading standard of *Twombly* and *Iqbal* for punitive damages," *Singh v. Amguard Ins. Co.*, No. CV 16-618 PSG (AJWX), 2016 WL 7469641, at *4 (C.D. Cal. Apr. 1, 2016) (citing *Kelley v. Corrections Corporation of America,* 750 F. Supp. 2d 1132, 1147–48 (E.D. Cal. 2010)), the court here is persuaded by the reasoning in *Singh*: those cases that have found fraud, malice and oppression may be alleged generally under Rule 9(b) "better harmonize the pleadings standards for punitive damages with the general pleading standards of Rules 8 [General Rules of Pleading] and 9(b)." *Id.* (citing *Keiper v. Victor Valley Transit Auth.*, No. CV 15–00703 BRO SPX, 2015 WL 3929641, at *7 (C.D. Cal. June 25, 2015); *Rees v. PNC Bank, N.A.*, 308 F.R.D. 266, 273–74 (N.D. Cal. 2015)). Therefore, "in federal court, a plaintiff may include a 'short and plain' prayer for punitive damages that relies entirely on unsupported and conclusory averments of malice or fraudulent intent." *Taheny v. Wells Fargo Bank, N.A.*, No. CIV. S-10-2123-LKK, 2011 WL 1466944, at *4 (E.D. Cal. Apr. 18, 2011) (citations omitted); s*ee also Somera v. Indymac Fed. Bank, FSB*, No. 2:09CV01947 FCD DAD, 2010 WL 761221, at *10 (E.D. Cal. Mar. 3, 2010) ("Under federal pleading standards, defendant's argument that plaintiff must plead specific facts to support allegations for punitive damages is without merit.").

Plaintiffs' claims provide sufficient support for her request for punitive damages. Plaintiffs allege defendant intentionally concealed the fact that the XPAND-S had not been properly approved by the FDA and "subsidized physicians to write articles in scientific journals regarding their use of the XPAND-S in the cervical spine," creating the impression in the medical community that the device was safe even though "there have never been any scientific studies on the safety and efficacy of using these devices in the cervical spine." Opp'n at 21; *see also* Compl. ¶¶ 18, 22–24. These allegations support the inference that defendant was aware of the probable dangerous consequences of allowing the device to be used in the cervical spine, yet willfully

failed to avoid such consequences by concealing facts from the medical community. *See Jager v. Davol Inc.*, EDCV 16-1424 JGB (KKx), 2016 WL 6157942, at *7 (C.D. Cal. Oct. 20, 2016) (denying motion to dismiss where plaintiffs alleged defendants failed to provide accurate information and warning to healthcare community so as to dissuade physicians from surgically implanting Kugel Patch); *Tapia v. Davol, Inc.*, No. 15CV179-GPC (JLB), 2015 WL 6828660, at *8 (S.D. Cal. Nov. 6, 2015) (same).

        G.        Existence of XPAND-S

Lastly, defendant argues the court should dismiss plaintiffs' complaint because the XPAND-S "does not exist," relying on search results from the FDA's website indicating no product entitled "XPAND-S" is associated with "globus" in the FDA's database. Mot. at 13 (citing Def.'s Req. for Jud. Not., Ex. 4). However, plaintiff provides a printout from an FDA database that tracks adverse events reported by medical device manufacturers that suggests the "XPAND Small" or a product with a very similar name, is associated with Globus. Pl.'s Req. for Jud. Not., Ex. 1 (listing "XPAND SMALL VBR" and "XPAND CORPECTORMY SPACER SMALL 12/14"); *see also Ritchie*, 342 F.3d at 907–08 (a court may "consider certain materials [such as] . . . matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment."). Because it is clear through the parties' briefing, the judicially noticed materials, and the court's discussion with defense counsel at hearing, that "XPAND-S" simply refers to XPAND Small, defendant is on notice of the device at issue. Plaintiffs' imprecise nomenclature does not warrant dismissing the complaint; however, plaintiffs may correct the name in any first amended complaint.

/////
/////
/////
/////
/////
/////
/////

V.   CONCLUSION

For the foregoing reasons the court GRANTS defendant's motion to dismiss plaintiffs' fraud by concealment. The claim is DISMISSED with leave to amend.

The court also GRANTS defendant's motion to dismiss all claims brought by plaintiff Clarence Bird. Those claims are also DISMISSED with leave to amend.

The motion to dismiss is otherwise DENIED.

Plaintiff SHALL file any amended complaint within fourteen (14) days.

This order resolves ECF Nos. 8, 9, and 13.

IT IS SO ORDERED.

DATED: August 18, 2020.

_____
CHIEF UNITED STATES DISTRICT JUDGE